**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHARLES W. LAHEY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**SHARON R. ALBRECHT**
Indiana Department of Child Services
South Bend, Indiana

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| R.W., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1107-JT-309 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71J01-1011-JT-265

**January 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

R.W., Jr. ("Father") appeals the involuntary termination of his parental rights to his minor child R.W., III ("R.W.")  Father presents two issues for our review, which we restate as:

1.     Whether the Indiana Department of Child Services ("DCS") gave Father timely and adequate notice of the case management plan.

2.     Whether the trial court's order terminating Father's parental rights is clearly erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The trial court issued the following findings and conclusions setting out the facts and procedural history of this case:

The allegations of the petition are true in that:  the child ha[s] been removed from the parent for at least six (6) months under a dispositional decree of this Court dated June 2, 2008, Cause Number 71J01[-]0804[-]JC[-]000252.

There is a reasonable probability that the conditions resulting in the removal of the child from his parents' home will not be remedied.

There is a reasonable probability that a continuation of the parent-child relationship will pose a threat to the well-being of the child.

It is in the best interest of the child that the parent-child relationship be terminated.

The St. Joseph County Department of Child Services has a satisfactory plan for the care and treatment of the child which is Adoption.

FINDINGS OF FACT

1.  [R.W.], III was born August 23, 2001[,] to [A.C.] and [Father].

2.  The St. Joseph County Department of Child Services, "DCS," removed the child from his biological mother on April 30, 2008.

3. The child and his half-brother, [B.B.], were adjudicated Children in Need of Services on May 7, 2008.

4. The original reason for involvement consisted of sexual molestation of the then seven (7) year old boy by his older brothers.

5. For a brief period, [R.W.] was reunified with his mother but later removed due to lack of supervision.

6. [Father] has been incarcerated since the CHINS case began.

7. [Father] will remain in prison for approximately one (1) more year.

8. On June 2, 2008, the CHINS Disposition Order mandated that Father is to: participate in individual counseling; visit with the child on a regular basis; maintain stable employment and/or a stable source of income; maintain stable and adequate housing, maintain consistent contact with DCS ; notify DCS within 24 hours in writing of any address and/or telephone change.

9. By the point of the Three Month Progress Report, August 13, 2008, the Family Case Manager noted that Father was not a participant in the case.

10. [Father] has failed to complete any of the required services. He testified that he has not completed any classes and/or therapy while in prison. He also stated that he has had no contact with his son and/or the department.

CONCLUSIONS OF LAW

In order to terminate a parent-child relationship, the State is required to allege and prove by clear and convincing evidence that:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six months under a dispositional decree. . . . In the instant cause, the dispositional order was entered June 2, 2008.

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

3

(ii) the continuation of the parent-child relationship poses a threat to the well being of the child. [R.W.] does not know his father. He cannot recall any memories of [Father]. The sexual abuse this child suffered at the hands of his half-brothers has left him a traumatized, emotionally stunted boy. Foster parents have provided structure, continuity, and necessary therapy for [R.W.] [Father] cannot today stand ready to see to it that [R.W.] is properly cared for and receiving what he needs. [Father] remains in custody of the State of Indiana. Even while in prison, [Father] has done nothing to enhance his ability to parent [R.W.] The needs of the child who has been victimized to the extent [R.W.] has endured differ from other children. And yet, [Father] has never taken the time to complete any educational course or any therapy to assist in fathering [R.W.] once he is at liberty. The Court finds that [Father]'s past criminal conduct and lack of self-improvement while incarcerated point to future incarcerations. Certainly this pos[es] a threat to his son's well being;

(C) termination of parental rights is in the best interests of the child; [R.W.] does not know his father. He has been cared for by loving, understanding foster parents. These individuals constitute his family. To ask [R.W.] to wait yet another year for his father to be released from prison would delay permanency for this child. It is in [R.W.]'s best interest that [Father's] parental rights be terminated.

(D) there is a satisfactory plan for the child; The foster parents have yet to decide whether they will adopt [R.W.] They have, however, promised to provide care for him. Their concern rests with the knowledge and experience of dealing with [R.W.]'s severe behavioral issues. Permanency for [R.W.] has been achieved by virtue of the fact that these foster parents have stood by him since his removal. That, the Court opines, provides a satisfactory plan for this child.

Appellant's App. at 8-10 (emphases added). This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

We begin our review by acknowledging that this court has long had a highly deferential standard of review in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses.

4

In re D.D., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied. A judgment is clearly erroneous only if the findings do not support the trial court's conclusions or the conclusions do not support the judgment thereon. Bester, 839 N.E.2d at 147. Thus, if the evidence and inferences support the trial court's decision, we must affirm. L.S., 717 N.E.2d at 208.

A parent's interest in the care, custody, and control of his or her children is arguably one of the oldest of our fundamental liberty interests. Bester, 839 N.E.2d at 147. Hence, "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." In re M.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. These parental interests, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. Id. In addition, although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. K.S., 750 N.E.2d at 836.

Before an involuntary termination of parental rights may occur, the State is required to allege and prove, among other things:

5

(B) that one (1) of the following is true:

    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2)(B) - (D) (2010). Moreover, "[t]he State's burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.' " In re G.Y., 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2 (2008)).

Our Supreme Court has recently reiterated that "on appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." Best v. Best, 941 N.E.2d 499, 503 (Ind. 2011). Moreover, Indiana Code Section 31-35-2-8(a) states that if the trial court finds that the allegations of the termination petition are true, the court shall terminate the parent-child relationship. See id.

### Issue One:  Due Process

Father first contends that he was denied his right to due process because, he alleges, he "never had an opportunity to participate in services in order to demonstrate his fitness as a parent because he was never told that such services were required of him." Brief of Appellant at 6. Initially, we observe that we may consider a party's

6

constitutional claim waived when it is raised for the first time on appeal. See Hite v. Vanderburgh County Office of Family & Children, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006). Father does not direct us to anything in the record showing that he asserted a constitutional challenge to the termination of his parental rights to the trial court, and our review of the transcript does not reveal any such challenge. Thus, the issue is waived. See id.; see also, In re B.J., 879 N.E.2d 7, 17 n.3 (Ind. Ct. App. 2008) (holding Father waived issue of alleged due process violation due to DCS' failure to provide him with a copy of the case plan during the CHINS proceeding where issue not raised to trial court).

Waiver notwithstanding, we address the merits of Father's contention that he was denied his right to due process. The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. We have repeatedly noted that the right to raise one's children is more basic, essential, and precious than property rights and is protected by the Due Process Clause. In re M.M., 733 N.E.2d 6, 10 (Ind. Ct. App. 2000). "Although due process has never been precisely defined, the phrase expresses the requirement of 'fundamental fairness.' " Id. (citing E.P. v. Marion County Office of Family & Children, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995)).

Father maintains that DCS "failed to notify" him that he was required to meet the requirements set out in the case plan in 2008. Brief of Appellant at 5. Thus, again, Father asserts that he "never had an opportunity to participate in services[.]" Id. at 6. But the evidence contradicts Father's contentions on this issue. In particular, Melissa Mensah, a case manager with DCS, testified that when the order was issued in 2008, a

copy of the case plan was sent to Father at his last known address, in compliance with Trial Rule 5(B). Transcript at 133. And in November 2010, more than six months prior to the final termination hearing, Mensah mailed a copy of the case plan to Father at the Westville Correctional Facility. Father testified that both parenting classes and individual therapy were available to him at Westville, but he did not attempt either at any time prior to the final termination hearing, including during the several months after he received a copy of the case plan from Mensah.

In sum, DCS presented Mensah's testimony that DCS sent Father a copy of the case plan in 2008 to his last known address, in compliance with Trial Rule 5(B). And Mensah sent Father another copy of the case plan several months prior to the final termination hearing. Thus, the evidence shows that Father was given the opportunity to comply with the case plan prior to the final termination hearing. Father's contention that he was not given timely or adequate notice that he was required to follow the case plan is without merit. Father has not demonstrated that he was denied his right to due process.

### Issue Two: Best Interests of R.W.

Father also contends that the trial court's conclusion that termination of his parental rights is in R.W.'s best interests is clearly erroneous.[1] Apart from setting out the relevant case law on this issue, Father's argument consists of a single paragraph:

---

[1] Both in his Statement of the Issues and in the Argument section of his brief, Father frames the issue as only whether the evidence supports the trial court's determination that termination is in R.W.'s best interests. However, on page 7 of his brief, Father states that he also "challenges the sufficiency of the evidence supporting the trial court's findings as to subsections 2(B)[, that there is a reasonable possibility that the conditions that resulted in the child's removal will not be remedied or that the continuation of the parent-child relationship poses a threat to the well-being of the child,] and (C)[, termination is in the child's best interests,] of the termination statute cited above. See I.C. § 31-35-2-4(b)(2)." (Emphasis added). But Father does not present either cogent argument or citations to the

> With the exception of father's incarceration, the evidence presented that would suggest the father is unable to be involved in the life of his child in some beneficial way is highly speculative, and any problematic aspects involved in a renewal of his relationship with the child would be equally present in the State's preferred outcome of adoption by a family other than his current foster family, who have declared that they do not wish to adopt the child. (Tr. p. 32 to 37, 51 to 53, 130 to 134). Short of a showing of this type, it must be concluded that it is in the best interest of the child to have some sort of relationship with his natural father. [See] In re Guardianship of B.H., 770 N.E.2d 283 (Ind. 2002).

Brief of Appellant at 7.

A determination of the best interests of a child should be based on the totality of the circumstances. See Lang v. Starke County Office of Family & Children, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), trans. denied. A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the child. Id. When determining whether termination of parental rights is in the best interests of the child, the trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-child relationship. In re A.D.W., 907 N.E.2d 533, 540 (Ind. Ct. App. 2008). Permanency is a central consideration in determining the best interests of a child. In re G.Y., 904 N.E.2d 1257, 1265 (Ind. 2009).

> Here, the trial court concluded that termination is in R.W.'s best interests because:

> [R.W.] does not know his father. He has been cared for by loving, understanding foster parents. These individuals constitute his family. To ask [R.W.] to wait yet another year for his father to be released from prison would delay permanency for this child. It is in [R.W.]'s best interest that [Father]'s parental rights be terminated.

---

appendix on appeal relevant to subsection (B) of the statute. As such, we address only his argument with respect to the sufficiency of the evidence that termination is in R.W.'s best interests.

Appellant's App. at 10.

The DCS presented ample evidence to support the trial court's finding on this issue. Wanda Shock, the Court Appointed Special Advocate ("CASA") assigned to R.W., testified that R.W.'s foster parents are "committed" to caring for R.W. and that his foster mother, in particular, "knows how to deal with [R.W.]" and that she "was impressed [with the foster mother]." Transcript at 61. Mensah, the case manager, testified, with respect to both R.W. and his half-brother[2], that termination is in the best interests of the children

> [b]ecause they need to have that consistency. They need that person to be there all the time and when that person is inconsistent, it is emotionally traumatizing to them. There's always that wondering if or when somebody's going to show up and be consistent and be there for them and will I be able to stay in this home forever or am I going to have to go back somewhere else and is this going to be a problem in the future? There's just too many unknowns for them.

Id. at 125. In sum, both Shock and Mensah testified that termination of Father's parental rights is in the best interests of R.W.

Further, the evidence shows that while Father lived with R.W. for a short time after R.W. was born, Father moved to Illinois in 2003, when R.W. was two years old. Thereafter, Father spoke with R.W. on the telephone, although the evidence does not show how frequent those phone calls were. And Father testified that he expressed an interest in visiting R.W., but that Mother discouraged visits. Then, after Father was arrested for armed robbery in 2007, he spoke with R.W. on the telephone. Father has not had any contact with R.W. since that time. Father has written letters to his own mother

---

[2] Father is not the father of the brother at issue here.

10

during his incarceration, but he has not asked his mother about R.W.'s well-being. Even after Father learned that R.W. had been determined to be a CHINS, Father did not contact DCS in an effort to communicate with R.W.

In sum, Father did not make any meaningful attempts to maintain contact with R.W. during the approximately four years after he had moved to Illinois and before he was arrested. Since his incarceration, Father likewise has not made any meaningful attempts to maintain contact with R.W. Father has not shown any interest in parenting classes or individual therapy while incarcerated, despite the availability of those services. That evidence, coupled with the recommendations of the CASA and case manager, support the trial court's determination that termination of Father's parental rights is in R.W.'s best interests.

Finally, the trial court provided a detailed explanation of its finding that the continuation of the parent-child relationship poses a threat to R.W.'s well-being, and Father does not present cogent argument challenging the sufficiency of the evidence supporting that finding. And, although not contested by Father on appeal, we hold that the evidence supports the trial court's determination that there is a satisfactory plan for R.W. For a plan to be "satisfactory," for purposes of the statute, it "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." Lang, 861 N.E.2d at 374. The fact that there is not a specific family in place to adopt the children does not make the plan unsatisfactory. In re B.D.J., 728 N.E.2d 195, 204 (Ind. Ct. App. 2000). Here, the State presented evidence that the foster parents intend to continue to foster R.W. and his half-

brother indefinitely.  Shock, the CASA, testified that the foster mother "promised . . . that she wouldn't give up on these two children and she's a strong woman."  Transcript at 61.  The trial court did not err when it found that the evidence is sufficient to show that there is a satisfactory plan for the care and treatment of the child.

This court will reverse a trial court's termination order only upon a showing of "clear error"—that which leaves us with a definite and firm conviction that a mistake has been made.  A.J. v. Marion County Office of Family & Children, 881 N.E.2d 706, 716 (Ind. Ct. App. 2008), trans. denied.  Here, the trial court made ample findings to support its ultimate decision to terminate Father's parental rights to R.W., and Father has failed to establish that the court's findings are not supported by the evidence.  We therefore find no error.  See e.g., Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002)  (explaining that, on appeal, it is not enough to show the evidence might support some other conclusion, rather, the evidence must positively require the conclusion contended for by the appellant before there is a basis for reversal).

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.