**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 07 2013, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**AARON S. LAWSON**
DCS Jay County Local Office
Portland, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE INVOLUNTARY          )
TERMINATION OF THE PARENT-CHILD           )
RELATIONSHIP OF:                          )
                                          )
M.R. (Minor Child)                        )
                                          )
And                                       )
                                          )
L.P. (Mother)                             )
                                          )
    Appellant-Respondent,          )
                                          )
        vs.       )    No. 38A04-1211-JT-573
                                          )
THE INDIANA DEPARTMENT OF CHILD           )
SERVICES,                                 )
                                          )
    Appellee-Petitioner.           )
                                          )

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian D. Hutchison, Judge
Cause No. 38C01-1206-JT-1

June 7, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

L.P. ("Mother") appeals the termination of her parental rights to her young daughter, M.R. Mother challenges the trial court's conclusion that termination of her rights is in M.R.'s best interests. However, Mother was incarcerated at the time of the termination hearing due to her neglect of M.R. and other criminal activity. Not scheduled to be released for another eight months, she was unable to provide for M.R. and would be on probation in Ohio after her release. M.R., meanwhile, who had spent most of her life in foster care, was thriving and bonded to her foster family. This is sufficient evidence to support the conclusion that termination was in M.R.'s best interests.

Mother also argues that the guardian ad litem ("GAL") assigned to her case performed deficiently because he did not personally speak to Mother, Mother's family, or M.R., and therefore we must reverse. But the GAL was well aware of the history of the case and M.R.'s progress in foster care. And Mother does not explain, nor is it apparent, how the case would have been affected had the GAL acted differently; thus, there is no basis for reversal. We affirm.

## Facts and Procedural History

Mother is the biological mother of M.R., born on February 18, 2010. Mother's first involvement with the local Jay County Office of the Indiana Department of Child Services ("JCDCS") came in August 2010, because Mother, M.R., and M.R.'s biological

father were homeless.[1]  M.R. was removed from her parents' care and adjudicated a child in need of services ("CHINS").  The parents were ordered to obtain suitable housing, find employment, and participate in services.  M.R. was returned to their care a short time later.

In March 2011, JCDCS learned that the parents had been arrested on drug-related charges.  M.R. was removed and placed in foster care a second time.  In May 2011, Mother was charged with Class C felony possession of a controlled substance and Class D felony neglect of a dependent.  Mother pled guilty, and the possession charge was decreased to a Class D felony.  She was sentenced to two concurrent, three-year sentences, with two years of each sentence suspended.

Shortly after Mother's release in early 2012, she was arrested in Ohio for illegal assembly or possession of chemicals to manufacture methamphetamine.  Mother admitted that she helped cook meth in someone's home in Ohio in exchange for free drugs.  Tr. p. 80, 82.  Mother's guilty plea to the Ohio charges triggered a probation violation in Indiana, where she returned to serve the rest of her sentence.

By the time Mother returned to Indiana, two-year-old M.R. was thriving in her foster-care placement, where she had been living for approximately eighteen months. She had bonded with her foster parents, whom she called mommy and daddy.  *Id.* at 53-54.  She treated the other child in the home as her sibling, and the two children "did everything together."  *Id.* at 51.  M.R. was happy, developing normally, and her foster parents hoped to adopt her.  *Id.* at 54.

---

[1] Biological father's parental rights have also been terminated.  Because he does not participate in this appeal, we limit our discussion to Mother where possible.

In June 2012, JCDCS filed a petition to terminate Mother's parental rights. The trial court held a hearing on the petition in September 2012. At the hearing, a DCS case supervisor, Joy Woolfe, told the court that M.R. was thriving in her foster-care placement and recommended termination, saying that M.R. needed permanency. *Id.* at 11. The GAL assigned to the case, Tom Diller, also recommended termination, citing the history of the case and the fact that M.R. was doing well in her foster placement. *Id.* at 68-69. Mother admitted her criminal history and inability to provide for M.R., but asked the trial court for another chance, saying that while she was not "what's best for [M.R.] right now, it doesn't mean eventually I won't be." *Id.* at 90. However, at the time of the termination hearing, Mother's release date was eight months away and after her release, she was required to return to Ohio to comply with probation requirements for her guilty plea in that state. At the end of September, the trial court entered its order with findings terminating Mother's parental rights. *See* Appellant's App. p. 9-11.

Mother now appeals.

## Discussion and Decision

On appeal, Mother challenges the trial court's conclusion that termination of her parental rights is in M.R.'s best interests. She also argues that the GAL assigned to the case performed so deficiently that reversal is required.

### I.  Termination of Parental Rights

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of

4

his or her children is 'perhaps the oldest of the fundamental liberty issues.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Indeed[,] the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb Cnty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Nevertheless, parental rights are "not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights." *Id.* (citing *In re D.D.*, 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), *trans. denied*).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (citation omitted). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Here, the trial court made specific findings and conclusions in its termination order. When a trial court enters specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *In re A.B.*, 888 N.E.2d 231, 235 (Ind. Ct. App. 2008) (citation omitted), *trans. denied*.

In Indiana, before parental rights may be involuntarily terminated, the State is required to allege and prove, among other things:

(B)     that one (1) of the following is true:

5

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). In addition, the State has the burden of pleading and proving each element of Indiana Code section 31-35-2-4(b) by "'clear and convincing evidence'" before the trial court can involuntarily terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). Here, the trial court found that all the requirements of Section 31-35-2-4 were met, but Mother challenges only the court's conclusion that termination of her rights was in M.R.'s best interests. *See* I.C. § 31-35-2-4(b)(2)(C).

A determination of what is in the best interests of a child should be based on the totality of the circumstances. *See Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied.* A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the child's best interests. *Id.* A trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-

6

child relationship. *In re A.D.W.*, 907 N.E.2d 533, 540 (Ind. Ct. App. 2008). Permanency is a central consideration in determining the best interests of a child. *In re G.Y.*, 904 N.E.2d at 1265.

Here, the trial court concluded that termination was in M.R.'s best interests because Mother was unable to care for M.R., termination would spare M.R. the trauma of being separated from her foster family, she was thriving in her foster-care placement, and her foster family wished to adopt her and was very capable of providing for her. *See* Appellant's App. p. 11. Mother does not challenge these findings; she challenges only the conclusion that they support termination of her rights. We cannot agree.

The record shows that Mother has been historically unable to provide M.R. with a suitable home due to homelessness and incarceration. At the time of the termination hearing, Mother was not scheduled to be released for another eight months and then was required to return to Ohio to comply with probation requirements for her guilty plea in that state. Critically, the record also shows that M.R. is well cared for and thriving in her foster-care placement, is bonded to her foster parents and her foster sibling, and her foster parents hope to adopt her. Those involved with the case, including case supervisor Joy Woolfe and GAL Diller, cited M.R.'s need for permanency and recommended the termination of Mother's parental rights.

Based on the totality of the evidence, we conclude that the trial court's finding that termination was in M.R.'s best interests was supported by clear and convincing evidence. *See McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003) (testimony regarding a child's need for permanency, coupled

7

with the fact that the children were thriving in their current foster home, supports a finding that termination is in the child's best interests). Although Mother asked the court for another chance to parent M.R., "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 375 (citing *In re A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992)), *trans. denied*. And M.R. should not be forced to wait and see if Mother will eventually be able to parent her. *See In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 883 (Ind. Ct. App. 2004) (children's needs are too substantial to force them to wait while determining if their parents will be able to parent them). We conclude that there is sufficient evidence to support the trial court's conclusion that termination of Mother's rights is in M.R.'s best interests.[2]

## II. Performance of the Guardian Ad Litem

Mother also argues that GAL Diller's performance was deficient and deprived the trial court of "additional evidence" necessary to its determination, so we must reverse. Appellant's Br. p. 12. In support of her claim that the GAL's performance was deficient, Mother cites this Court's opinion in *Wagner v. Grand County Department of Public Welfare*, 653 N.E.2d 531 (Ind. Ct. App. 1995).

---

[2] Mother argues that her case is like *In re G.Y.*, 904 N.E.2d at 1257, where our Supreme Court reversed a termination judgment. But *G.Y.* is distinguishable. The mother in *G.Y.* never committed an offense during her child's lifetime; she was incarcerated for a crime that took place before the child's conception. In *G.Y.*, the mother's release was imminent and she had secured post-release employment and housing. Here, Mother committed offenses during M.R.'s lifetime; her incarceration in Indiana was due in part to her neglect of M.R. Mother continued to engage in criminal activity in Ohio after her initial release from the DOC. At the time of the termination hearing, Mother's release was still eight months away and after her release, she was required to return to Ohio to comply with probation requirements there. Mother's reliance on *G.Y.* is misplaced.

The purpose of appointing a GAL is to represent and safeguard the best interests of the child. *See* Ind. Code § 31-9-2-50. In *Wagner*, this Court found that the GAL had performed this duty despite the fact that the GAL relied on DCS's case reports and did not speak with biological father Wagner or his family. 653 N.E.2d at 534. The Court explained that in Wagner's case, "the [GAL] based her recommendation that Wagner's parental rights be terminated on his repeated incarceration and resulting lack of contact with [his child]," which were easily confirmed facts. *Id.* The GAL's report also indicated that after being released from prison and before the filing of the termination petition, Wagner stole a car, which showed his continuing pattern of criminal activity. Finally, the Court noted that the GAL attempted to contact Wagner several times but was unable to locate him. The *Wagner* Court concluded that the GAL had not failed to represent and protect the best interests of Wagner's child.

We reach the same conclusion here. The GAL assigned to this case was a former attorney and senior judge with many years of legal experience. *See* Tr. p. 67. The GAL did not personally speak with Mother, Mother's family, or two-year old M.R.[3] Instead, he based his recommendation on JCDCS records and his knowledge of the case, focusing on Mother's criminal history and the fact that M.R. was thriving in her foster-care placement. These facts were confirmed at the termination hearing. Although Mother makes much of what the GAL did not do, she does not explain, nor is it apparent, what additional evidence he might have gleaned or how this might have affected the outcome of the case; thus, there is no basis for reversal.

---

[3] GAL Diller testified that he spoke to M.R.'s foster mother by phone. *See* Tr. p. 120.

Affirmed.

KIRSCH, J., and PYLE, J., concur.