907 N.E.2d 533 (2008)
In the Matter of the Termination of the Parent-Child Relationship of A.D.W. and A.N.W., minor children, and Leasa Wedding, their mother,
Leasa Wedding, Appellant-Respondent,
v.
Department of Child Services of Vanderburgh County, Appellee-Petitioner.
No. 82A05-0806-JV-321.
Court of Appeals of Indiana.
October 2, 2008.
Publication Ordered November 26, 2008.
*535 Erin L. Berger, Evansville, IN, Attorney for Appellant.
Jonathan M. Young, Evansville, IN, Attorney for Appellee.

OPINION
BAKER, Chief Judge.
Appellant-respondent Leasa Wedding appeals the trial court's denial of her motion for continuance and motion for parenting services from appellee-petitioner, Department of Child Services of Vanderburgh County (DCS). In addition, Wedding appeals the trial court's judgment terminating her parental rights with regard to her two children, A.D.W. and A.N.W. Specifically, Wedding argues that the denial of her motions violates the Americans with Disabilities Act[1] and that DCS failed to establish the requirements of Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence as required *536 to terminate her parental rights. Finding no error, we affirm the trial court's judgment.

FACTS
Wedding is the biological mother of A.D.W., born on August 20, 1992, and A.N.W., born on November 16, 1995. On November 28, 2005, DCS representatives removed both children from Wedding's home following Wedding's stay in a hospital emergency room for a panic attack on November 22, 2005. While at the hospital, Wedding tested positive for methamphetamines, benzodiazepine, and cocaine. The day after Wedding's trip to the emergency room, she tested positive for marijuana and cocaine.
On December 1, 2005, DCS filed its petition alleging that A.D.W. and A.N.W. were Children in Need of Services (CHINS). The children were determined to be CHINS on December 6, 2005. Prior to this CHINS proceeding, the children had been declared wards of DCS on four previous occasions.
On February 14, 2006, the trial court entered a dispositional decree in which Wedding was ordered to comply with random drug screens; however, Wedding eluded sixteen of these tests and failed to return the drug screener's calls within twenty-four hours. Furthermore, Wedding did not complete the substance abuse treatment programs as ordered by the trial court. Wedding consistently failed to attend the day treatment program recommended by her counselor. As a result of her noncompliance, the treatment facility closed Wedding's case on May 19, 2006.
Wedding also failed to properly use the court-ordered resources provided by Parent Aide. Services began on December 7, 2005, with the goals of helping Wedding improve her parenting and budgeting skills and addressing her substance abuse. However, Wedding missed seventeen meetings and used Parent Aide only as a resource to help her run errands. For instance, in February 2006, Wedding asked a Parent Aide employee to drive her to pay her water bill. At some point during the trip, Wedding left the supervision of the Parent Aide employee and was found at a nearby beauty salon having an allergic reaction after having her nails done. Moreover, Parent Aide service was eventually suspended on September 7, 2006, because Wedding could not be located.
Wedding was ordered to have supervised visits with the children twice every week. Wedding missed approximately fourteen scheduled visits between February 2006 and September 2006. Another three visits ended early because of Wedding's behavior which included positive drug screens and tardiness. Moreover, there were numerous problems during the visits that Wedding did attend, including Wedding's inappropriate behavior, preoccupation with her boyfriend, lack of interaction with one or both of the children, making empty promises to the children, arguing, sleeping during the visit, talking on the phone during the visit, cursing, and the children's reluctance to attend.
On November 29, 2006, the trial court approved a permanency plan for A.D.W. and A.N.W., which included termination of Wedding's parental rights. On December 20, 2006, DCS filed petitions to terminate Wedding's parental rights. Both parties requested and received a number of continuances. On February 8, 2007, Wedding was incarcerated for possession of cocaine, and on October 24, 2007, she was released. On November 28, 2007, Wedding requested CHINS services and visits with her children. The trial court denied both requests.
*537 On December 18, 2007, as the result of a random drug screen, Wedding tested positive for morphine, hydrocodone, hydromorphone, and alpha-hydroxy alprzolam. She did not have a valid prescription for these drugs. On December 26, 2007, Wedding renewed her motion for continuance and again requested parenting services from DCS. The motion for continuance was denied, and the request for services was taken under advisement. On January 3, 2008, Wedding again requested a continuance and services from DCS; however, the trial court denied both requests. The same day, the trial court held a factfinding hearing on the petitions to terminate parental rights. Thereafter, on February 26, 2008, the trial court entered findings of fact and conclusions of law and an order terminating Wedding's parental rights to both children. Wedding now appeals.

DISCUSSION AND DECISION

I. Denial of Motions Abuse of Discretion
Wedding argues that the trial court abused its discretion when it denied her motion for continuance on January 3, 2008. This court has previously stated that "[t]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." Rowlett v. Vanderburgh County Office of Family & Children, 841 N.E.2d 615, 619 (Ind.Ct.App. 2006) (citations omitted). Furthermore, this court will reverse the trial court only when there has been an abuse of discretion. Id. An abuse of discretion may be found in a denial of a motion for continuance when the moving party has shown good cause for granting the motion; however, no abuse of discretion will be found if the denial did not result in prejudice to the moving party. Id.
In support of her position, Wedding directs us to Rowlett, which held that the trial court abused its discretion in denying the parent's motion for continuance. Id. In Rowlett, the father was incarcerated at the time of the termination hearing and did not have the opportunity to demonstrate his fitness as a parent on that date. Id. Here, on the other hand, Wedding was not incarcerated at the time of the January 3, 2008, termination hearing. In fact, she had been released for over two months at that time. Therefore, although Wedding had the opportunity to demonstrate her ability to assume parental duties, she chose not to do so and continued the same pattern of inappropriate behavior, as demonstrated by her positive drug test on December 18, 2007.
Wedding also points to In re A.J., 881 N.E.2d 706, 719 (Ind.Ct.App.2008), for the proposition that demonstrating changed circumstances provides a good reason for granting a motion for a continuance. Wedding's reliance on this case is also misplaced because again, the facts are distinguishable. Specifically, the mother in A.J. had made significant improvements in addressing her substance abuse problems and appeared to have a genuine desire to maintain a relationship with her children. Id. at 715. Here, no such improvements had been made at the time of the hearing. As stated earlier, Wedding tested positive for numerous drugs on December 18, 2007. In addition, Wedding sent her daughters inappropriate gifts and an inappropriate letter after being released from incarceration in October 2007. Thus, Wedding has demonstrated no significant progress with regard to her parenting skills.
Even more compelling, although the court in A.J. stated that "perhaps the more prudent course would have been to continue the case," it went on to state that we "may not reweigh the evidence or judge the credibility of witnesses, but must decide only if the juvenile court's judgment *538 is clearly erroneous." Id. at 719. Finding that the judgment of the trial court was not clearly erroneous, this court then affirmed the judgment in A.J. Id. Similarly, we cannot say that the trial court's denial of Wedding's motion for a continuance was clearly erroneous. Therefore, the trial court did not abuse its discretion in denying the motion.
In a related issue, Wedding argues that the trial court's denial of her motion for parenting services was an abuse of discretion. Indiana Code section 31-34-21-5.8 provides that DCS is not required to provide services for reunification if it is contrary to the permanency plan adopted by the trial court.
In this case, the trial court changed the permanency plan for each child from reunification to termination of parental rights on November 29, 2006. Wedding requested services after this date and, therefore, the trial court did not abuse its discretion in denying Wedding's motion for services.

II. Violation of the Americans with Disabilities Act
Notwithstanding our discussion above, Wedding maintains that the denial of her motions for continuance and parenting services from DCS violated the Americans with Disabilities Act[2] (ADA) because the trial court's denial of the motions was based upon her past drug addiction. This argument is without merit because Indiana does not permit the use of ADA arguments as a defense to the termination of parental rights. Stone v. Daviess County Div. of Children & Family Servs., 656 N.E.2d 824, 830 (Ind.Ct.App.1995). To allow parents to use the ADA as a defense to the termination of parental rights would elevate the rights of parents above the rights of children, which is an undesirable result. Id. at 831. Thus, Wedding's claim fails.

III. Sufficiency of the Evidence
Wedding argues that DCS failed to establish the necessary requirements to terminate her parental rights. Specifically, Wedding argues that the State failed to prove by clear and convincing evidence that the conditions that resulted in the children's removal would not be remedied, that the continuation of parent-child relationship poses a threat to the well-being of the children, and that termination is in the best interests of the children.
The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. But parental rights are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind.Ct.App.2004). Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. Id. at 265.
When reviewing the termination of parental rights, we neither reweigh the evidence nor judge witness credibility, considering instead only the evidence and reasonable inferences that are most favorable to the judgment. Here, the trial court made specific findings and conclusions thereon in its order terminating Wedding's parental rights. Where the trial court enters specific findings and conclusions thereon, we apply a two-tiered standard of review. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind.2005). First, we determine whether the evidence supports the findings, and then we determine whether the findings support the judgment. Id. We will not set aside the trial court's judgment terminating *539 a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind.Ct.App.1997). A judgment is clearly erroneous when the evidence does not support the findings or the findings do not support the result. In re S.F., 883 N.E.2d 830, 835 (Ind.Ct.App. 2008).
To effect the involuntary termination of a parent-child relationship, the State must present clear and convincing evidence establishing the following elements:
(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months:
(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.
Ind.Code § 31-35-2-4(b)(2).
Wedding argues that the trial court failed to take into account changed circumstances when it determined that conditions that led to the removal of the children would not be remedied. When determining whether the conditions will be remedied, the trial court must judge the parent's fitness to care for the children at the time of the termination hearing, taking into consideration evidence of changed conditions. In re D.J., 755 N.E.2d 679, 684 (Ind.Ct.App.2001). However, a parent's habitual patterns of conduct must also be evaluated to determine the probability of future negative behavior. Id.
As discussed earlier, Wedding has exhibited a habitual pattern of drug abuse and neglect of her children. Wedding did not cooperate with the drug treatment facility personnel and failed to complete the program. Tr. p. 189. In addition, Wedding missed sixteen court-ordered drug tests, and her children had been declared wards of DCS on four previous occasions. Id. at 85, 228. Moreover, Wedding misused Parent Aide and did not successfully follow through with supervised visitation. Finally, Wedding tested positive for morphine, hydrocodone, hydromorphone, and alpha-hydroxy alprzolam as recently as December 18, 2007, which was after the trial court had approved a permanency plan that included termination of Wedding's parental rights. Id. at 61-64. In light of this evidence, we cannot say that the trial court's conclusion that conditions would not be remedied was clearly erroneous.
Wedding also argues that there was insufficient evidence to show that she was a threat to her children's well-being. Indiana Code section 31-35-2-4(b)(2)(B) requires that the State show either that there exists a reasonable probability that conditions will not be remedied or reasonable probability that the continuation of the parent-child relationship poses a threat *540 to the well-being of the child. As discussed above, there was sufficient evidence supporting the trial court's conclusion that there was a reasonable probability that conditions would not be remedied. Thus, DCS did not have to prove that the continuation of the parent-child relationship posed a threat to the well-being of A.D.W. and A.N.W. Nevertheless, the trial court concluded that the continuation of the parent-child relationship would pose a threat to the well-being of both children. Appellant's App. p. 31. Given the evidence previously discussed, we cannot say that this determination was clearly erroneous.
Finally, Wedding argues that DCS failed to prove that terminating her parental rights was in the best interests of the children. When determining whether termination of parental rights is in the best interest of the child, the trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-child relationship. In re D.J., 755 N.E.2d at 684. Here, the trial court concluded that termination was in the children's best interest because "[t]he child[ren] need[] stability, permanency, and a safe environment, none of which can be provided by the mother." Appellant's App. p. 31.
Samantha Freeman, the DCS family case manager, testified that both children were comfortable and relaxed living with their aunt and uncle. Tr. p. 203. Freeman also testified that she believed that terminating Wedding's parental rights was in the best interest of the children. Id. at 213. When asked why, Freeman stated that the children's grades had improved since being placed with their aunt and uncle and the children had stability for the first time in their lives. Id. at 213-14.
Additionally, Angie Deeds, the children's therapist, testified that she believed it would be harmful to the children to continue the parent-child relationship. Id. at 113. Deeds testified that the children had been doing better since having more stability in their lives and would continue to improve with stability. Id.
In sum, these recommendations by the caseworker and the therapist coupled with the evidence of Wedding's extensive drug use, her failure to complete court-ordered services, and testimony that the children were thriving in their current home is sufficient to support a finding that termination of parental rights is in the children's best interest. See In re A.J., 881 N.E.2d at 718-19 (holding that the recommendations of the children's caseworker and guardian ad litem coupled with evidence of the mother's extensive drug history, her incompletion of court-ordered services, and testimony that the children were happy and doing well in their foster homes were sufficient for the trial court to determine that termination of parental rights was in the children's best interest). Thus, we conclude that the trial court properly terminated Wedding's parental rights with regard to A.D.W. and A.N.W.
The judgment of the trial court is affirmed.
MATHIAS, J., and BROWN, J., concur.

ORDER
On October 2, 2008, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Request for Publication of Memorandum Decision.
Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:
1. The Appellee's Request for Publication of Memorandum Decision is GRANTED, and this Court's opinion handed down *541 in this cause on October 2, 2008, marked Memorandum Decision, Not for Publication in now ORDERED PUBLISHED.
BAKER, C.J., MATHIAS and BROWN, JJ., concur.
NOTES
[1] 42 U.S.C. § 12101(b).
[2] 42 U.S.C. § 12101(b).