**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:
Attorney for R.S.
**JOHN T. WILSON**
Anderson, Indiana

Attorney for Ja. S.:
**ANTHONY C. LAWRENCE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**REBECCA L. MOSES**
DCS, Henry County Office
New Castle, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
Jan 27 2012, 9:20 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF J.S. and A.S., Minor Children, <br><br> R.S., Mother, and Ja.S., Father, <br><br>     Appellants-Respondents, <br><br>        vs. <br><br> INDIANA DEPARTMENT OF CHILD SERVICES, <br><br>     Appellee-Petitioner, | ) ) ) ) ) ) ) ) ) No. 33A01-1106-JT-246 ) ) ) ) ) ) |

---

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause Nos. 33C01-1101-JT-1, 33C01-1101-JT-2

---

**January 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

R.S. ("Mother") and Ja.S. ("Father") ("Parents") appeal the termination of their parental rights to J.S. and A.S. ("the Children"). Parents assert the State provided insufficient evidence to sustain the terminations. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Mother and Father have two children, J.S., born on September 19, 2002, and A.S., born on December 3, 2004. The family was the subject of investigation by the Department of Child Services (DCS) in November 2005, when DCS initiated a safety plan due to unstable housing and Parents' drug use. On February 22, 2006, DCS removed the Children from the home due to Parents' drug use and unstable housing, and on April 10, 2006, the Children were adjudicated Children in Need of Services (CHINS). The case was closed on May 2, 2007, after Parents completed the required services, including parenting skills classes and substance abuse treatment.

On July 7, 2008, the Children again were adjudicated CHINS due to Parents' drug use. DCS provided services to address Parents' substance abuse issues and parenting skills. DCS also provided family and individual counseling for Parents and anger management skills classes for Father. The Children were returned to Mother on September 4, 2009, after she completed all the required services and agreed she would not allow any person who was using drugs, including Father, in the presence of the Children.

On December 3, 2009, Children were again removed from Mother's care due to the Parents' drug use. Children were adjudicated as CHINS on December 18, and Mother and Father were ordered to complete services. On July 24, 2010, DCS sought to discontinue

2

reunification efforts between Parents and Children because Parents missed appointments, continued to use drugs, and had not completed services offered by DCS. The juvenile court denied DCS's modification request, but authorized placing the Children in a pre-adoptive home.

On January 6, 2011, DCS filed a petition to involuntarily terminate Parents' rights to the Children. On April 18, the juvenile court heard evidence, and on May 11, the court terminated Parents' rights.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S., D.S., and B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by

3

inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship in Indiana, the State must allege and prove:

(A)     that one (1) of the following is true:
    (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
    (iii)   The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B)     that one (1) of the following is true:
    (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of

the child.

       (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services; [and]

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Mother and Father each challenge the sufficiency of the evidence supporting the trial court's findings under subsections (B) and (C) of Section 31-35-2-4(b)(2). Father also challenges the sufficiency of the evidence supporting the trial court's findings under subsection (D) of Section 31-35-2-4(b)(2). [1]

1.    <u>Reasonable Probability Conditions Would Not Be Remedied</u>

Because our legislature wrote subsection (B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *See L.S.*, 717 N.E.2d at 209. Here, it found a reasonable probability the conditions resulting in the children's removal and continued placement outside of Parents' care will not be remedied.

---

[1] Mother also seems to argue her due process rights were violated when DCS "unilaterally" terminated DCS services and visitation with the children. Mother did not argue this before the juvenile court, and on appeal she cites no case law to support her contention due process was denied by these proceedings. Thus, the issue is waived. *See Dennerline v. Atterholt*, 886 N.E.2d 582, 594 (Ind. Ct. App. 2008) (issue not presented before trial court is waived for appellate review), *reh'g denied, trans. dismissed*; *see also* Ind. Appellate Rule 46(A)(8)(a) (failure to present cogent argument supported by legal authority waives issue for appellate review).

In making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court also may consider, as evidence whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

In concluding there was a reasonable probability the conditions resulting in the children's removal and continued placement outside of Parents' care will not be remedied, the trial court found:

> 9. The underlying CHINS action is the **third** separate Child in Need of Services adjudication in less than four years.
> 
> \* \* \* \* \*
> 
> 13. After the third removal of [J.S.] on December 3, 2009 [J.S.] was never returned to the care and custody of [Parents] and the removal became the basis for the petition to terminate parental rights.
> 14. On July 14, 2010, DCS sought to modify the dispositional decree to cease reunification efforts which petition alleged that parents had

> missed appointments, had continued to use illegal or non-prescribed drugs, had failed to complete ordered substance abuse treatment and failed to make adequate progress in counseling.
>
> * * * * *
>
> 16. Father did not complete substance abuse treatment or individual counseling as referred by DCS.
>
> 19. Mother completed substance abuse treatment and individual counseling for a third time in 2010. Mother has a long history of substance abuse which constitute[s] a pattern of conduct despite a period of sobriety immediately prior to the TPR trial. However compelling this period of sobriety may be, it is outweighed by her history of substance abuse and co-dependency of Father who has demonstrated a lesser commitment to sobriety.
>
> * * * * *
>
> 26. Each parent identified the other as a trigger for their [sic] substance abuse. However, despite evidence of domestic violence and representations [sic] of separation the parents remain married and co-dependent.

(Mother's App. at 154-56)[2] (emphasis in original). Mother asserts these findings are contrary to the evidence presented during the termination hearings.

Mother cites testimony from Emily McCall, Mother's counselor. McCall testified Mother had been making progress on her substance and co-dependency issues, Mother had maintained employment, and "the children would be safe" in Mother's care. (Tr. at 223.) To the contrary, DCS provided evidence the Children were removed three previous times from the Parents' care and adjudicated as CHINS due to substance abuse issues. The juvenile court found: "Mother's self-referred therapist recommended the Child be returned to Mother after seeing Mother for only three sessions and without seeing the child." (Mother's App. at

---

[2] The language of the trial court's order is from the order terminating Mother and Father's rights to J.S. The findings in the order regarding A.S. are identical. (*See* Mother's App. at 142-151) (Court's order terminating Parents' rights to A.S.).

7

159.)

In its brief, the State analogizes Mother's current cooperation and completion of services to her behavior during the second CHINS adjudication. In that instance, the trial court returned the Children to Mother because she had completed the necessary steps for reunification and agreed the Children would have no contact with Father or anyone abusing drugs. However, three months after regaining custody of their Children, DCS had to remove the Children again due to Parents' drug use. Further, DCS presented evidence Mother had a history of substance abuse, multiple unsuccessful attempts at rehabilitation, and an unhealthy co-dependency on Father, who did not complete multiple DCS services.

In his argument, Father also points to the testimony of McCall, who is also his counselor. McCall testified Father was improving his understanding of his drug addiction and was working hard to overcome it. Father reported he has not used drugs since May 2010. The State presented evidence Father was diagnosed with bipolar disorder, but had not sought treatment; Father's continued drug use was a reason for the three CHINS adjudications; and Father had not completed services required by DCS for reunification with his children.

The juvenile court found a pattern of non-compliance with DCS services by both parents, and the multiple CHINS adjudications further support the court's decision to terminate Parents' rights to their children. *See, e.g., In re A.D.W. and A.N.W.*, 907 N.E.2d 533, 539 (Ind. Ct. App. 2008) (affirming trial court's finding, based on four prior CHINS adjudications, that conditions leading to petition for termination of mother's rights would not be remedied); *see also Bergman v. Knox County OFC*, 750 N.E.2d 809, 812 (Ind. Ct. App.

8

2001) (court was permitted to give more weight to abundant evidence of mother's pattern of conduct than mother's testimony she had changed her life and could better accommodate her children's needs). Parents' arguments are invitations to reweigh the evidence, which we may not do.[3] *See In re D.D.*, 804 N.E.2d at 265.

2.      Best Interests of the Children

DCS also proved termination of parental rights is in the Children's best interests. In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Regarding the best interests of the Children, the juvenile court entered separate orders that contained identical findings:

34.      The Child demonstrates regressive behaviors when visiting with Mother and Father which includes the use of "baby talk[,]" whining and crying.

---

[3] Parents also argue DCS did not meet its burden to prove continuation of the parent-child relationship posed a threat to the child. However, DCS is required to prove only one of the elements in Ind. Code § 31-35-2-4(b)(2)(B). As that burden was met when DCS proved the conditions that led to the Children's removal would not be remedied, we need not address whether Parents' continued relationship with the Children posed a threat to the Children.

The regressive behavior ceases when outside the presence of parents. These behaviors formed the basis for Dr. Robert's opinion that it is not in the best interest of the children to return to their parents.

35. Mother and Father did not parent as a team during visitation, with each parent responding to the needs of one child and Mother interceding on Father's efforts to parent or discipline the Child.

36. Mother demonstrates co-dependent parenting skills during discipline by trying to "make the Child feel better" rather than instructive parenting.

37. Visitation supervisor Jennifer Landis felt additional parenting skills education was needed despite the fact that it had been provided on three prior occasions.

38. The Child's therapist, Dr. Creta Roberts, described the Child as exhibiting compulsive behaviors caused from being in a chaotic parental environment where he did not feel safe. Further that the Child has made real improvement while in foster care including improved academic achievement and social skills and opined that it is not in the child's best interest to be returned to the parents.

39. No DCS provider ever recommended that Mother or Father be reunified with the Child.

\* \* \* \* \*

41. The child is older and has a relationship with his parents which makes these proceedings even more poignant and difficult. During the in camera interview with the Court, the child requested a visit with his parents but did not ask to go home or to live with his parents again[;] in fact the child appears most bonded with a prior foster mother.

(Mother's App. at 159-160.)

Mother attempts to argue the termination of her rights is not within the Children's best interests by reiterating her argument regarding the conditions that prompted their removal. She presents no cogent argument to counter the trial court's findings, nor points to evidence the trial court disregarded to indicate error. Thus, her argument that termination of her parental rights is not in the best interest of the Children is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (failure to present cogent argument supported by legal authority waives issue for appellate review).

10

Father's only argument regarding best interests of the children is "[t]he children were comfortable and well adjusted to their foster home in the Fall of 2010 before DCS asked that they be removed to a pre-adoptive home." (Br. of Father at 23.) Father's argument is an invitation to reweigh the evidence, which we may not do. *See In re D.D.*, 804 N.E.2d at 265.

   3.   Satisfactory Plan for Care and Treatment of Children

Pursuant to Ind. Code § 31-35-2-4(b)(2)(D), for the juvenile court to terminate parental rights it must first find there is a satisfactory plan for the care and treatment of the child. This plan need not be detailed, as long as it "offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re L.B.*, 889 N.E.2d 326, 341 (Ind. Ct. App. 2008). Adoption is generally a satisfactory plan for care and treatment of a child following the termination of parental rights. *Id.*

The trial court found the family case manager, the Children's therapist, and the CASA all agreed "adoption by current foster parents is a satisfactory plan for care and treatment of the child." (Mother's App. at 159.) Father does not argue the plan for care and treatment is inadequate, but instead claims the plan is "unacceptable." (Br. of Father at 23.) He requests the CHINS wardship be extended "until [Father] has a chance to provide (sic) fitness[.]" (*Id.*) He offers no argument why his request to extend the CHINS wardship is better than the plan set forth by the court for the adoption of the Children, or how the trial court erred in deciding the best plan for the Children was adoption. We accordingly decline to address that allegation of error. *See* Ind. Appellate Rule 46(A)(8)(a) (failure to present cogent argument supported by legal authority waives issue for appellate review). As there was evidence to

11

support the court's plan for care and treatment of the Children following the termination of parental rights, we cannot find it unsatisfactory. *See In re L.B.*, 889 N.E.2d at 341 (pre-adoptive placement a satisfactory plan for children's care and treatment following termination of parental rights).

## CONCLUSION

DCS presented clear and convincing evidence the Children had been removed from the Parents' home for at least six months; the conditions under which the Children were removed from Parents would not be remedied; termination of parental rights was in the best interests of the Children; and there was a satisfactory plan for the care and treatment of the Children follow termination of parental rights. Accordingly, we affirm.

Affirmed.

CRONE, J., and BROWN, J., concur.