**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF PARENT-CHILD RELATIONSHIP OF Mi.S. & M.W. (Minor Children), )
)
)
)
and )
)
M.S. (Mother) )
)
Appellant, )       No. 49A05-1306-JT-282
)
vs. )
)
THE INDIANA DEPARTMENT OF CHILD SERVICES, )
)
)
Appellee. )

APPEAL FROM THE SUPERIOR COURT OF MARION COUNTY
The Honorable Marilyn Moores, Judge
The Honorable Larry J. Bradley, Magistrate
Cause No. 49D09-1209-JT-34593
Cause No. 49D09-1209-JT-34594

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

M.S.'s ("Mother's") parental rights to two of her six children were terminated by the Marion Superior Court. Mother appeals and argues that the evidence was insufficient to support the trial court's termination of her parental rights.

We affirm.

### Facts and Procedural History

Mother has six children, but only two children are subject to the termination proceeding at issue. M.S. was born on May 10, 2003, and M.W. was born on July 17, 2006. M.S.'s father's whereabouts are unknown, and he has not established paternity to her. M.W.'s father is deceased.

On November 24, 2009, a petition was filed alleging that the children were in need of services ("CHINS") due to educational neglect. The petition also alleged that Mother had recently given birth to her sixth child, N.S., who tested positive for marijuana at birth. Mother's fifth child, N.P., also testified positive for an illegal substance at birth, and Mother successfully participated in an Informal Adjustment with the Department of Child Services ("DCS"), which case closed prior to N.S.'s birth.

On December 9, 2009, Mother admitted the allegations in the CHINS petition, and all six children were removed from Mother's care. The trial court ordered Mother to participate in certain services including home based case management and therapy, substance abuse treatment, visitation, and random urine screens.

In May 2011, Mother had leased a home, had a car, and was employed. She was participating in services and had unsupervised visitation with the children. But shortly thereafter, she lost her job, and her house no longer had electricity or water service. Also, during a visitation, N.P. injured her foot, and Mother did not seek medical care. Mother also did not seek medical care for her four youngest children who had scabies. Finally, service providers were concerned that Mother's boyfriend was abusive, and he was often present during visitation.

For all of these reasons, in October 2011, Mother's oldest child and M.S., who had been placed in Mother's home on temporary trial visitation, were ordered detained out of her home. Mother then became inconsistent with scheduled visitation. Her visitation with all six children was suspended in June 2012 after she missed ten of twelve visits. Visitation was reinstated in August 2012, but was again suspended on December 15, 2012, after she missed two more visits, and the DCS filed the petition to terminate her parental rights.

Throughout the CHINS and termination proceedings, Mother completed the substance abuse treatment and completed random urine screens. She never tested positive for illegal substances, but she also did not complete all requested urine screens. Mother attempted to find stable housing and employment; however, her attempts were unsuccessful. On the date of the termination hearing, Mother was living with a friend and "that housing [was] not appropriate for the children." Appellant's App. p. 39. Mother's progress in home-based therapy "was characterized as being up and down due

3

to inconsistent participation, and having on and off employment, housing and transportation." Id.

The service providers in this case were also concerned about Mother's abusive relationship with W.P., the father of her three youngest children who are not a part of this termination case. W.P. was charged with domestic battery and battery in 2012. However, the charges against W.P. were dismissed after Mother recanted her statement. Mother refused to admit to DCS services providers and to the court that she was a victim of domestic violence until the last day of the termination hearing. On that date, she finally admitted that W.P. had been abusing her over a two-year period.

After an initial placement in therapeutic foster care, M.S. and M.W. are now placed with relatives, who plan to adopt them, and they have bonded with their caregiver. The children have "special needs resulting from trauma affected behavior and receive therapy and mentoring. The caregivers are meeting these needs." Id. at 40. Mother does not agree that her children need therapy. And she "failed to respond when [Ma.S.'s][1] behavior therapist reached out to her to join in with the therapy that was in place for well over a year." Id.

The guardian ad litems ("GALs") did not agree with the DCS's plan for adoption. The trial court disagreed with the GALs and found that "unstable housing and income, a long denial of domestic violence, and whether [Mother] would meet the children's basic and special needs raise serious safety concerns." Id. at 41. Therefore, the trial court

---

[1] Ma.S., Mother's oldest child, is also not a part of this proceeding.

4

determined that termination of Mother's parental rights was in M.W. and M.S.'s best interests and concluded:

34. There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their mother. [Mother] appears to have remedied the original reason the CHINS was filed, that being illegal substance use. Conditions that resulted in having the children removed a second time and conditions that have kept the children from being reunified are stability in housing and income issues, domestic violence issues, and appropriate parenting, existed at the time of the August 22, 2012 Permanency Hearing, and currently exist. It has been three and one-half years.

\*\*\*

36. Continuation of the parent-child relationship poses a threat to the children's well-being. [Mother] is not at a place, after three and one-half years of services, to offer the children stability and permanency or be able to safely meet their needs, . . . Termination would provide the children with the opportunity to obtain a permanent home through adoptions and where their special needs will continue to be met. The children have been outside their mother's home for a long time and have struggled with the stressful ups and downs.

\*\*\*

41. Termination of the parent-child relationship is in the best interests of the children. It would be best if the children could be raised by their mother, but after three and one-half years, the children need to be able to get on with their lives by being adopted into a safe, stable and permanent home.

Id. at 40-41. Mother now appeals the trial court's order terminating her parental rights to M.S. and M.W.

**Standard of Review**

When we review a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. In re P.P., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's

unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Here, in terminating Mother's parental rights, the trial court entered specific factual findings and conclusions. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. L.S., 717 N.E.2d at 208.

**Discussion and Decision**

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." In re M.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. In the Matter of Termination of the Parent Child Relationship of K.S., 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be

6

terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before parental rights may be involuntarily terminated in Indiana, the State is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>     (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>     (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>     (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2)(B)-(D). The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" In re G.Y., 904 N.E.2d 1257, 1260-1261 (Ind. 2009) (quoting Ind. Code § 31-37-14-2 (2008)). Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Bester, 839 N.E.2d at 148. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. Id. Finally, "if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship." Ind. Code § 31-35-2-8(a).

### I. Threat to the Well-Being of the Children

Indiana Code § 31-35-2-4(b)(2)(B) requires the State to establish, by clear and convincing evidence, only one of the three requirements of subsection (b)(2)(B). Because we find it to be dispositive, we limit our review to Mother's allegations of error pertaining to subsection (b)(2)(B)(ii) of Indiana's termination statute, namely, whether DCS proved by clear and convincing evidence that there is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of the children.

In determining whether the continuation of the parent-child relationship poses a threat to a child's well-being, the trial court need not wait until the child is irreversibly influenced by a deficient lifestyle before terminating the relationship. In re E.S., 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). Instead, "[w]hen the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate." Id. A parent's habitual pattern of conduct is relevant to determine whether there is a substantial probability of future neglect or deprivation of the child. In re M.M., 733 N.E.2d 6, 13 (Ind. Ct. App. 2000). "A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

Despite over three years of services, Mother has not been able to establish stable housing for herself and her children. Mother certainly made a sincere effort to obtain stable housing earlier in the proceedings, and had made enough progress for DCS to

8

place her two oldest children with her, including M.S. However, in October 2011, the children were returned to foster care after caseworkers discovered that Mother's home had no electricity or water. And during the termination hearings, which occurred in February, March and May of 2013, Mother resided with a cousin and later with a friend. Neither of those residences was appropriate for the children. Mother has also been unable to maintain stable employment.

Throughout these proceedings, Mother also habitually failed to participate in or seek health care for her children when needed. When M.S.'s and M.W.'s younger sibling injured her foot while in Mother's care, Mother failed to seek medical treatment for the child. In October 2011, Mother's four youngest children had scabies. Mother does not agree that her children need therapy, including sexual abuse therapy for M.W. and mental health therapy for M.S. Mother also refused to participate in her oldest child's therapy when his behavior therapist asked Mother to do so.[2] Mother has stated that the children will not participate in therapy if they are returned to her care. Also, DCS had to get a court order to provide medication for the children because Mother refused to do so despite doctor's orders. See Tr. p. 200.

Mother also maintained an abusive relationship with W.P., who is the father of Mother's three youngest children. The service providers believed W.P. was abusing Mother because of bruising to her face and a broken finger. Mother's sister told DCS

---

[2] Mother's objects to our court's consideration of the trial court's findings discussing her oldest son's therapy because the oldest son is not a part of this proceeding. However, the trial court's findings addressing Mothers lack of participation in her oldest son's therapy and her opposition to giving him prescribed medication are relevant to our consideration of her habitual patterns of conduct and whether Mother can safely parent her children.

that their family was concerned that there was domestic violence between W.P. and Mother. W.P. was charged with battery and domestic battery in December 2012, but the charges were dismissed when Mother recanted her statement. Mother continued to deny any domestic violence between herself and W.P. to the caseworkers and to the court throughout the proceedings, until the final termination hearing in May 2013. Also, M.W. acted out sexually on his foster sibling and disclosed to caseworkers that W.P. had taught him the "nasty game." Tr. p. 242. The DCS caseworkers were also concerned that W.P. was living in Mother's household despite a court order that he not have contact with the children. Mother testified that she ended the relationship with W.P. in December 2012.

Mother was referred to home-based counseling services five times because services were unsuccessfully closed, or she failed to benefit from the services. Mother's participation in services was inconsistent, and on more than one occasion, Mother's home-based counselor did not have any contact with Mother. Home-based counselor Jennifer Lopez Hunt was concerned that Mother was unable to provide for the children's basic needs. Tr. p. 359. Mother's family case managers also had difficulty contacting Mother because she lacked a working phone, or the phone numbers provided were incorrect. Mother would engage in services for some period of time but at other times was difficult to work with.

Mother also failed to show up for several visits with the children or would call to cancel shortly before the visit was to take place. Mother's inconsistent visitation was "very damaging to the kids." Tr. p. 202. The missed visits caused the older children, including M.S. and M.W., to act out, and they physically damaged the foster parents'

10

home, including tearing doors off hinges and putting holes in the walls. Mother's last visitation with the children occurred in November 2012. Her visits were suspended for a second time shortly thereafter because she missed two additional visitations with the children.

Mother has habitually failed to provide stability for the children and has neglected their basic needs. Mother has not demonstrated that she has benefited from over three years of services. Importantly, in the months leading up to the termination hearings, Mother continually caused emotional harm to the children by missing many scheduled visitations. This evidence supports the trial court's conclusion that continuation of the parent-child relationship poses a threat to the well-being of M.S. and M.W.

## II. Best Interests

Mother also challenges the trial court's conclusion that termination of her parental rights is in M.S. and M.W.'s best interests. A determination of what is in the best interests of a child should be based on the totality of the circumstances. See Lang v. Starke Cnty. Office of Family & Children, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), trans. denied. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports a finding that termination of parental rights is in the child's best interests. Id. A trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development are permanently impaired before terminating the parent-child relationship. In re A.D.W., 907 N.E.2d 533, 540 (Ind. Ct. App. 2008). Permanency is a central consideration in determining the best interests of a child. In re G.Y., 904 N.E.2d 1257, 1265 (Ind. 2009).

11

In support of her arguments, Mother relies almost exclusively on the GALs' testimony that the children would benefit from continued contact with Mother because they are bonded with her. Although the GALs believed that Mother should be given more time to complete services because they felt that she is capable of parenting the children, the DCS case workers disagreed. Mother's emphasis on the GALs' testimony is simply a request to reweigh the evidence, which our court will not do.

Case manager Farr testified that termination of Mother's parental rights was in M.S. and M.W.'s best interests, and observed that the children, who are finally progressing in therapy, are currently in a stable, permanent placement with their maternal great uncle. Tr. pp. 286-87. Mother has continually neglected the physical and mental health of the children, and their safety. In over three years, Mother has not been able to provide a permanent and stable home for the children, and is also currently unable to do so. The children have ongoing mental health needs, and from the evidence in the record, the trial court could reasonably conclude that Mother will not tend to those needs if M.S. and M.W. are returned to her care. For all of these reasons, we conclude that the DCS presented clear and convincing evidence that termination of Mother's parental rights is in the children's best interests.

**Conclusion**

We will reverse a termination of parental rights only upon a showing of clear error, that is, that which leave us with a definite and firm conviction that a mistake has ben made. See In re L.B., 889 N.E. 326, 342 (Ind. Ct. App. 2008). We find no such error in

12

this case. Accordingly, we affirm the trial court's judgment terminating Mother's parental rights to M.S. and M.W.

Affirmed.

BRADFORD, J., and PYLE, J., concur.