## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2019, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of E.M., G.M., and Q.M., Minor Children,

P.M., Mother,

*Appellant*,

v.

The Indiana Department of Child Services,

*Appellee*.

September 9, 2019

Court of Appeals Case No. 19A-JT-497

Appeal from the Henry Circuit Court

The Honorable Bob A. Witham, Judge

Trial Court Cause Nos.
33C01-1807-JT-28
33C01-1807-JT-29
33C01-1807-JT-30

**Brown, Judge.**

[1] P.M. ("Mother") appeals the involuntary termination of her parental rights with respect to her children, E.M., G.M., and Q.M. Mother raises one issue which we revise and restate as whether the trial court's grant of DCS's request to cease efforts to reunify her with her children violated her right to due process under Article 1, Section 12 of the Indiana Constitution and the Fourteenth Amendment to the United States Constitution. We affirm.

*Facts and Procedural History*

[2] Mother had three children, E.M., born on April 23, 2003, G.M., born on September 13, 2004, Q.M., born on January 16, 2006. In September 2016, DCS filed separate petitions alleging that the children were in need of services ("CHINS") under cause numbers 33C01-1609-JC-110 ("Cause No. 110"), 33C01-1609-JC-111 ("Cause No. 111"), and 33C01-1609-JC-112 ("Cause No. 112"), based upon a situation in which Mother was the victim of a stabbing while the children were present and she tested positive for methamphetamine. On February 14, 2016, the court held a hearing, and Mother and the children's father entered admissions, and the court found the children to be CHINS. On February 27, 2017, the court entered an Order on Fact Finding Hearing under Cause Nos. 110, 111, and 112, which found that Mother admitted in part that she has a substance abuse issue in the home where the children reside and "certain mental health concerns, which negatively impacts her ability to provide care to Children." Appellant's Supplemental Appendix Volume II at 60.

[3] On June 13, 2017, DCS filed a progress report alleging Mother failed to make progress under Cause Nos. 110, 111, and 112. On July 26, 2017, the court

entered an Order on Periodic Case Review indicating that Mother did not appear at a June 30, 2017 hearing, but her attorney did appear. The order stated that Mother had not complied with the children's case plan and had not visited the children. The order also states:

> 4. The children's case plan, services, and placement meet the special needs and best interests of the children. DCS has made reasonable efforts to provide family services and/or to finalize another permanency plan.
>
> 5. The projected date for the children's completion of the permanency plan is 8/14/17.
>
> 6. It is an appropriate time to implement a permanency plan for the children.
>
> 7. [] DCS will file Cease Efforts if no improvement in compliance with services.

*Id.* at 123.

[4] On September 27, 2017, DCS filed a Permanency Report which indicated Mother's lack of progress and participation and that she had a previous outstanding warrant from a charge on July 17, 2017, for possession of marijuana, was arrested on September 19, 2017, and was in the Henry County Jail on three counts of possession of a controlled substance as well as counts of possession of methamphetamine, unlawful possession of a syringe, possession of marijuana, false informing/false reporting, and possession of paraphernalia.

[5] In October 2017, the court granted DCS's requests under Cause Nos. 110, 111, and 112 to cease efforts towards reunification and changed the permanency

plan to adoption. On November 6, 2017, the court entered an order granting DCS's request to change the permanency plan from reunification to adoption.

[6] On July 26, 2018, DCS filed petitions to terminate the parent-child relationship under cause numbers 33C01-1807-JT-28 ("Cause No. 28"), 33C01-1807-JT-29 ("Cause No. 29"), and 33C01-1807-JT-30 ("Cause No. 30").

[7] On October 25, 2018, and January 18, 2019, the court held factfinding hearings. Mother testified that a woman attacked her in front of the children and stabbed her once resulting in seventeen staples and that G.M. leapt out of the car to try to protect her. She testified that she was drug tested and failed. She acknowledged that she had children involved with DCS dating back to 2008 when a welfare check was performed and she had marijuana and again in 2012 when there were concerns about her children's safety and she failed a drug test. She testified that she moved about once a year and was homeless when recently incarcerated. She acknowledged that the children had not been in her care since September 2016 and that she had been incarcerated for approximately a year since then. She indicated that DCS offered her inpatient treatment, IOP, and substance abuse classes and that she did not attend inpatient treatment or IOP. When asked if she always complied with DCS screening requests since September 2016, she answered: "Not always." Transcript Volume II at 39. When asked if it was fair to say that DCS had worked with her on and off since 2008 to try to help her maintain her relationship with her boys, she answered affirmatively. When asked what services she engaged in other than through DCS since September 2016, she indicated that she completed a parenting class

the beginning of that week and a substance abuse class during her previous incarceration. When asked if she ever contacted Family Case Manager Hailey Thornburg ("FCM Thornburg"), she answered: "I don't believe so." *Id.* at 47.

[8] Mother acknowledged that she had pending charges of possession of methamphetamine, possession of cocaine, unlawful possession of a syringe, possession of marijuana, and possession of paraphernalia. The court admitted a plea agreement related to the pending case of cause number 33C02-1809-F6-472, and Mother indicated that the case had not been adjudicated yet but her plan was to plead guilty pursuant to the plea agreement to possession of methamphetamine as a level 6 felony. The court also admitted the chronological case summary for cause number 33C02-1709-F6-442, which indicates that Mother pled guilty to possession of methamphetamine and unlawful possession of a syringe as level 6 felonies in January 2018 and was sentenced to an aggregate sentence of 500 days.

[9] On cross-examination, Mother testified that she successfully completed a parenting class and believed she would receive a certification but had not yet received it. She indicated that she received "some certificate of completion" of a substance abuse program at the end of 2017. *Id.* at 49. She stated that she had been incarcerated for approximately thirteen months since September 2016 and that her plea agreement in the pending case referred to a suspended sentence of 720 days. On redirect examination, Mother indicated that she did not take any classes during the fourteen months since the case had been initiated and when she was not incarcerated.

[10] Susan Stamper, the Director of the Henry County CASA office, testified that she believed moving forward with the termination of Mother's parental rights was in the best interest of the children and that the children had expressed their desire to be adopted. She also stated:

> This is about reaching a permanency for the children. I greatly respect that [Mother] has a plan for upon her release, but it's a beginning – a beginning as homeless and reestablishing herself and these boys have been in the system for two (2) years. [Mother] has got some work ahead of her and I believe historically she has not been able to hold it together. I wish her the best of luck at this time, but I think at this point we are talking about the boys and establishing their permanency.

*Id.* at 57.

[11] FCM Thornburg testified that she had been working with Mother's case for about seven months, that she never met Mother outside of court, and that Mother never contacted her or submitted any reports or documentation of any program that she completed either in or out of jail. She also stated that DCS's recommendation was termination of Mother's parental rights. When asked on cross-examination whether she reached out to Mother, she answered: "Not personally, but I have attempted to make contact through other family members." *Id.* at 63.

[12] On January 31, 2019, the court entered an order in Cause Nos. 28, 29, and 30 terminating Mother's parental rights to the children. The court found that the children had been removed from Mother for at least six months under

disposition decrees dated March 29, 2017, under Cause Nos. 110, 111, and 112; that DCS became involved when the children were present during an altercation at a gas station at which time Mother was attacked by another woman resulting in multiple cuts or stab wounds; and one of the children physically intervened in an attempt to protect her from the physical assault. The Court found:

> 7. The Department attempted to work with both Mother and Father but were unsuccessful in helping the family reunify.
>
> 8. The Court under the respective JC cause numbers issued an order ceasing efforts toward reunification as to both parents and changing the children's permanency plan to termination of parental rights and adoption on October 6, 2017, that order being signed on November 6, 2017.
>
> 9. The Department offered services to Mother in an attempt to help her overcome the substance abuse issues that were negatively impacting her ability to parent the children.
>
> 10. The Department has twice previously been involved with this family, once in 2008, and once in 2012, providing services on each occasion. The children were reunited with a parent successfully on both occasions.
>
> 11. The Department offered multiple services to [Mother], including but not limited to Intensive Outpatient Substance Treatment, Inpatient Substance Treatment, and Random Substance Screens.
>
> 12. During the pendency of this case, [Mother] has been incarcerated in the Henry County Jail for at least 13 months.
>
> 13. [Mother], upon advice of counsel, asserted her right against self-incrimination when the Department questioned about her continued use of illegal substances. . . .

14.  Henry County CASA Director Susan Stamper testified that it was her opinion that moving forward with Termination of Parental Rights with regard to the . . . children was important to provide them with permanency and stability.

15.  The options of guardianship and adoption have been discussed with [Q.M.], [G.M.], and [E.M.] by persons representing CASA and DCS.

16.  After those discussions, both CASA and the Department continue to support the position that Termination of the Parent-Child Relationship with [Mother] be effectuated so that the children can be provided permanency through adoption.

Appellant's Appendix Volume II at 47-48.  The court found that there was a reasonable probability that continuation of the parent-child relationship posed a threat to the well-being of the children and that termination was in the children's best interests.

## *Discussion*

[13]  The issue is whether the trial court's grant of DCS's request to cease efforts to reunify Mother with her children violated her right to due process under Article 1, Section 12 of the Indiana Constitution and the Fourteenth Amendment to the United States Constitution.  Mother acknowledges that she did not object to DCS's stoppage of efforts during the CHINS proceedings or raise the issue during the termination proceedings, but she asserts that the error constituted fundamental error.  She contends that her right to due process of law under the Indiana Constitution was violated when the court allowed DCS to cease reasonable efforts to reunify her with her children.

[14] Article 1, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Section 1 of the Fourteenth Amendment to the United States Constitution provides in part that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ."

[15] Ind. Code § 31-34-21-5.5 is titled "Reasonable efforts to preserve and reunify families," and subsection (b) provides in part: "[e]xcept as provided in section 5.6 of this chapter, the department shall make reasonable efforts to preserve and reunify families . . . ." "Indiana Code section 31-34-21-5.8 provides that DCS is not required to provide services for reunification if it is contrary to the permanency plan adopted by the trial court." *In re A.D.W.*, 907 N.E.2d 533, 538 (Ind. Ct. App. 2008). Moreover, this Court has previously held that "the provision of family services is not a requisite element of our parental rights termination statute" and that "[a] failure to provide services . . . does not serve as a basis on which to directly attack a termination order as contrary to law." *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000).

[16] On appeal, Mother cites to the progress reports dated June 13, 2017, and September 27, 2017 report. However, both reports detail her lack of progress. The June 13, 2017 report stated that services to finalize a plan of reunification

included case management services, substance abuse assessment and treatment recommendations, inpatient substance abuse programming at Tara Treatment Facility, random drug screens, and individual/family therapy. The report stated that referrals were made for a substance abuse assessment to both Anchor Behavioral and Meridian and Mother had not completed a substance abuse assessment. It stated that a referral for case management was made to Meridian, but Mother had not participated in case management services. It stated that the family case manager offered inpatient substance abuse treatment to Mother and she declined "saying that she does not need this service." Appellant's Supplemental Appendix Volume II at 93. According to the report, Mother's drug screens included positive screens for THC on September 30, 2016, and November 4, 2016; Mother refused screening on February 4, 2017, and told the case manager that her screen would be positive for THC, Xanax, Klonapin, and Ritalin; she tested positive for THC on February 17, 2017; she tested positive for THC and methamphetamine on March 22, 2017; and she failed to show up for a drug screen on March 23, 2017. With respect to visitation, the report stated:

> [Mother's] original supervised visit provider, Meridian[,] canceled their service with her on 3/28/17 due to too many missed visits with the boys. This referral was made on 10/18/16. [Mother] did not engage in regular visitation with the boys until the beginning [of] November. During this service she was inconsistent in her visitation and would often try and bring strange men and other children to the visit. The service provider would report that she was often not able to regulate her emotions and spent a lot of time crying in front of the boys.

> A new referral for supervised visit was made on 4/4/17 to Family Community Partner. [Mother] has been engaging in weekly visits with the boys in Muncie. She has canceled one visit telling the provider that she had to handle "court stuff."

*Id.* at 94-95. The report stated: "To date [Mother] and [Father] have not participate[d] in services to address their mental health and substance abuse. Both parents have been inconsistent/inappropriate in their visitation with the boys." *Id.* at 96. The report stated: "FCM has learned that [Mother] was pulled over by LEA on 3/10/17 and now has pending charges for unlawful possession of a syringe and possession of a controlled substance. Her next hearing for these charges in scheduled at the Henry County Court for 7/3/17. [Mother] to date has not notified FCM of these charges." *Id.* at 98. The report indicated that Mother "reported to FCM that she attempted suicide in November by slitting her wrists" and "[s]he has declined inpatient help or treatment offers from FCM." *Id.* at 99.

[17] The September 27, 2017 report stated that: a referral was made for case management but Mother had not participated in services; a referral for a substance abuse assessment was made to Anchor on February 23, 2017, but Mother had not completed the assessment; and a referral for a substance abuse assessment was made to Meridian on April 3, 2017, Mother completed a substance abuse evaluation on June 26, 2017, but never returned to participate in the recommended treatment, and the case was closed. The report also stated:

> [DCS] would like to ask the Court of [sic] order a Cease of Efforts towards Reunification efforts in regards to [Father] and

[Mother] with their children [G.M.], [Q.M.] and [E.M.] and to establish a new Permanency Plan of Adoption for the boys. This recommendation is due to [Father] and [Mother's] history of multiple substantiations for neglect/previous CHINS case in 2008, past and current criminal history/charges, a history of untreated mental health issues/unstability, past and current substance abuse use, and a history of instability regarding being able to provide the boys with proper housing and maintaining an income sufficient to raise three boys.

*Id.* at 134. The report indicated that Mother was made aware of or invited to child and family team meetings scheduled for June 19, 2017, March 17, 2017, and December 13, 2016, but did not attend. The report also indicated that a new referral for supervised visits was made on April 4, 2017, that Mother canceled a visit in May and missed all visits for June, and the provider then closed out her case due to "no call, no shows, the entire month of June." *Id.* at 133. It also indicated that Mother was in the Henry County Jail after an arrest on September 19, 2017, on three counts of possession of a controlled substance as well as possession of methamphetamine, unlawful possession of a syringe, possession of marijuana, false informing/false reporting, and possession of paraphernalia. We also note that Mother does not point to any evidence that she specifically requested visitation or other services.

[18] In light of the record, we cannot say that Mother's rights under Article 1, Section 12 of the Indiana Constitution or the Fourteenth Amendment to the

United States Constitution were violated.[1] *See In re H.L.*, 915 N.E.2d 145, 148 (Ind. Ct. App. 2009) (observing that the absence of services was due to the father's incarceration and that he did not point to any evidence that he specifically requested visitation or other services, and holding that the inability to provide services did not amount to a denial of due process); *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 377 (Ind. Ct. App. 2006) ("Because of [the father's] incarceration, not only was the [Monroe County Office of Family and Children ("MCOFC")] unable to offer services to him, but it was unable to even fully evaluate him to determine what services are necessary. MCOFC's failure to offer services to [the father] does not constitute a deprivation of his due process rights."), *trans. denied*.

[19] For the foregoing reasons, we affirm the trial court's order.

[20] Affirmed.

Altice, J., and Tavitas, J.

---

[1] Mother does not challenge the sufficiency of the evidence with respect to the termination of her parental rights.