# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 24 2019, 10:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of T.M., Z.M., E.M., & N.M., (Children) and S.M. (Father); | September 24, 2019 |
| | Court of Appeals Case No. 19A-JT-1019 |
| S.M. (Father), | Appeal from the Henry Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Bob A. Witham, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 33C01-1901-JT-6 33C01-1901-JT-7 33C01-1901-JT-8 33C01-1901-JT-9 |
| *Appellee-Petitioner* | |

**May, Judge.**

[1] S.M. ("Father") appeals the involuntary termination of his parental rights to T.M., Z.M., E.M., and N.M. (collectively, "Children"). He argues the evidence does not support four of the trial court's findings. Additionally, he asserts the trial court's findings do not support its conclusions that the conditions under which Children were removed from his care would not be remedied, that the continuation of the parent-children relationship would present a threat to Children's well-being, and that termination of Father's parental rights was in Children's best interests. We affirm.

# Facts and Procedural History

[2] Father and K.M.[1] ("Mother") (collectively "Parents") are the biological parents of T.M., born November 15, 2007; Z.M., born February 22, 2010; E.M., born August 12, 2013; and N.M., born June 20, 2017. Parents were married until late in the proceedings. On April 28, 2016, Mother called police to report Father had beaten her. Father was arrested, and the Department of Child Services ("DCS") engaged the family in an informal adjustment. As part of the informal adjustment, Mother agreed to keep Children away from Father until Father received therapy to address domestic violence.

---

[1] Mother voluntarily relinquished her parental rights to Children and does not participate in this appeal.

[3]     On June 21, 2016, DCS removed Children from Parents' care and filed petitions alleging T.M., Z.M., and E.M. were Children in Need of Services ("CHINS") based, at least in part, on the domestic violence perpetrated by Father upon Mother. On August 12, 2016, Mother and Father admitted Children were CHINS and the trial court adjudicated Children as such. The trial court also entered a dispositional order that day.

[4]     From July 2016 to November 2, 2016, Father engaged in some services, however, he was aggressive with DCS staff members during some of those services. On July 15, 2016, Father went to his mother-in-law's house and would not leave after being asked to do so. He was charged with criminal trespass and pled guilty to that charge on July 20, 2016. On September 8, 2016, Father pled guilty to Class A misdemeanor domestic battery stemming from the April 28, 2016, incident with Mother. On November 2, 2016, Father told DCS that he wanted to voluntarily relinquish his parental rights to T.M., Z.M., and E.M. He later retracted that request.

[5]     On December 11, 2016, Father broke a window at Mother's house and yelled at Mother. He was charged with criminal trespass, criminal mischief, and invasion of privacy. He pled guilty to those charges on March 14, 2017. Additionally, on March 14, 2017, Father pled guilty to invasion of privacy and violation of a protective order based on an incident involving Mother on January 3, 2017.

[6] On March 28, 2017, Father kicked in the door to Mother's apartment, spit in her face, and took her phone when she tried to call 911. The State charged him with residential entry, domestic battery, interference with the reporting of a crime, criminal mischief, and domestic battery with an unrelated prior conviction. Father pled guilty to these charges on August 8, 2017.

[7] On June 20, 2017, N.M. was born and on June 23, 2017, N.M. was removed from Parents' custody because the other children in the household had been adjudicated as CHINS. On June 27, 2017, DCS filed a petition alleging N.M. was a CHINS. The trial court adjudicated N.M. as a CHINS on July 14, 2017. The trial court entered a dispositional decree in N.M.'s CHINS matter on September 6, 2017.

[8] On September 9, 2017, Father slammed Mother into a wall. On October 3, 2017, Father pled guilty to criminal trespass for sleeping on Mother's porch. On July 27, 2018, Father pled guilty to invasion of privacy for the September 9 incident, and the trial court sentenced him to 600 days in jail. Father was incarcerated at the time of the termination fact-finding hearing.

[9] On July 3, 2018, the trial court changed the permanency plan for T.M., Z.M., and E.M. from reunification to adoption by their foster parents. On December 21, 2018, the trial court changed the permanency plan for N.M. from reunification to adoption by her foster parents. On January 10, 2019, DCS filed petitions to terminate the parental rights of both Mother and Father. The trial court held a fact-finding hearing on April 1, 2019, during which Mother

voluntarily relinquished her parental rights to Children. On April 4, 2019, the trial court issued an order involuntarily terminating Father's parental rights to Children.

## Discussion and Decision

[10] We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[11] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

## Challenged Findings

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the

evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[14] Father challenges four of the trial court's findings, arguing they are not supported by the evidence. We accept the remaining findings as true because Father does not dispute them. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

### *Finding 7*

[15] Finding 7 states, in relevant part: "DCS filed a CHINS petition as to [Children] . . . after [Mother] failed to comply with the safety plan of the Informal Adjustment: to keep [Father] out of the home until he had completed services to deal with domestic aggression." (App. Vol. II at 14.) Father argues Finding 7 is not supported by the evidence. However, during the termination hearing, Mother testified:

> [DCS]:     And part of the informal adjustment you were to keep the children safely away from [Father] until he had therapy. Is that right?
>
> [Mother]:  Yes.

> [DCS]:      Then there arose some issues with regard to your
>             health and the children were taken from your care.
>
> [Mother]:   Yes.

(Tr. Vol. II at 29.) Father contends Mother's testimony proves Children were not removed from Mother's care because of the domestic violence issues in the home, but because of Mother's health issues.

[16]  However, the trial court made multiple findings that Father does not challenge regarding the ongoing domestic violence issues between Mother and Father, including:

> 6. DCS had previously been working with the family as a result of domestic battery, with which [Father] was charged and convicted[.]
>
> * * * * *
>
> 31. [Father] has been charged with and convicted of eight (8) separate criminal cases, all of which involved as victims [Mother] or her mother, [D.W.].

(App. Vol. II at 148-9.) Father admitted during the fact-finding hearing that he had been convicted twice for domestic battery against Mother, twice for invasion of privacy against Mother, and once each for trespass, residential entry, and criminal confinement against Mother. Other evidence regarding Father's criminal history was admitted including Chronological Case Summaries, probable cause affidavits, and orders of conviction regarding these

crimes. Therefore, it is reasonable to infer that Children were, at least in part, removed from the familial home due to domestic violence perpetrated by Father. *See Madlem*, 592 N.E.2d at 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *see In re L.S.*, 717 N.E.2d at 208 (appellate court will affirm if evidence and inferences therefrom support finding).

### Finding 25

[17] Finding 25 states "DCS has offered a number of services to [Mother] and [Father] to bring about reunification of [Children] with one or both of their parents." (App. Vol. II at 149.) Father contends this finding is "wholly unsupported by the evidence." (Br. of Father at 11.) However, DCS presented a permanency report from the CHINS case that indicated Father was offered "Sowers of Seeds Batters Intervention; clinical interview/assessment for psychological/psychiatric services; home-based casework; and home-based therapy." (DCS Ex. 7). Additionally, during the fact-finding hearing, the Family Case Manager testified, "I had multiple conversations with [Father] about his willingness to engage in services. Sometimes he said that he would engage in services and I had referred him to services." (Tr. Vol. II at 46.) Finally, during the fact-finding hearing, Father answered in the affirmative when asked, "During the time of your involvement with DCS beginning in 2016 have you at least on one occasion told DCS workers that you will not involve yourself in services that were offered without cost to you?" (*Id*. at 38.) Father's argument is an invitation for us to reweigh the evidence and judge the

credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses).[2]

### Finding 26

[18] Finding 26 states, "[Father] has failed to comply with services and has spent a portion of the time the cases have been open as an incarcerated person." (App. Vol. II at 149.) Father argues that although DCS admitted evidence of Father's criminal history during the CHINS case, "one cannot discern from these documents precisely how much time Father spent incarcerated during the CHINS proceedings." (Br. of Father at 11.) During the fact-finding hearing, DCS presented evidence that Father was incarcerated at the time of the hearing, though he recently had been admitted to the hospital for psychiatric services. Additionally, the Family Case Manager testified visitations between Father and Children had been terminated because Father was incarcerated. Finally, one of the Family Case Managers testified she could not engage Father in services during the CHINS case because he was incarcerated. Father's argument is an invitation for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses).

---

[2] Additionally, we do not review the adequacy of services provided during CHINS proceedings when reviewing the propriety of a termination order. *See In re J.W., Jr.,* 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015) (noting requirement for DCS to provide reasonable services was not a requisite element of parental rights termination statute and DCS's failure to provide services could not serve as basis to attack termination order), *trans. denied*.

## Finding 35

Finding 35 states, "Continuation of the parent-child relationship between all four children and [Father] would disallow the children from establishing permanency of where and with whom they belong." (App. Vol. II at 150.) However, the two preceding findings, which Father does not challenge, report Children's well-being in their current placements. As this seems to be the subject of the challenged finding, we conclude any error in its inclusion is mere surplusage and not grounds for reversal of the termination order. *See Lasater v. Lasater*, 809 N.E.2d 380, 398 (Ind. Ct. App. 2004) ("Findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision.").

## Reasonable Probability Conditions Would Not Be Remedied

The trial court must judge a parent's fitness to care for his child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Father argues the trial court's findings do not support its conclusion that there existed a reasonable probability that the conditions under which Children were removed from Father's care would not be remedied.

[21]    The trial court found that Father battered Mother on at least one occasion in Children's presence and that domestic violence was, at least in part, the reason for Children's removal from the familial home. Further, DCS presented evidence that Father was to complete treatment called "Sowers of Seeds Batters [sic] Intervention," (DCS Ex. 7), and he did not. Additionally, the trial court's unchallenged findings regarding Father's fitness to care for Children include:

> 27. [Father] has been recently been [sic] hospitalized for approximately two weeks for in-patient treatment at Ball Memorial Hospital Psychiatric Unit.
>
> 28. [Father] testified that he does not know what caused his need for in-patient treatment and that he was not given a diagnosis upon release from his stay at the Psychiatric Unit.
>
> 29. [Father] admits that there have been more than two periods since the inception of [Children's] CHINS cases during which he has been homeless for at least sixty (60) days.
>
> 30. [Father] has not had a consistent home, at the same address in his own name and funded solely by resources that he has legally acquired for any period of six (6) months or longer since July of 2016.

(App. Vol. II at 149.) The evidence and findings indicate Father's inability to care for Children and his refusal to complete services to address the issues which precipitated Children's removal. Therefore, the findings support the trial court's conclusion that there was a reasonable possibility that the conditions under which Children were removed from the familial home would not be

remedied. *See In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (termination appropriate when Children were removed due to domestic violence issues and Father refused to complete services).[3]

## Children's Best Interests

[22] In determining what is in Children's best interests, a trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[23] Father contends termination of his parental rights is not in Children's best interests because the "scant evidence revealed during a hasty proceeding did not

---

[3] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need decide only if the evidence and findings support the trial court's conclusion as to one of these two requirements. *See In re L. S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights). Because the trial court's findings supported its conclusion that the conditions under which Children were removed from Father's care would be not be remedied, we need not consider Father's argument regarding whether the continuation of the Father-Children relationship poses a risk to Children's well-being.

support the court's conclusion that permanent, irreversible termination of a biological father's parental rights as to his four children was in the children's best interests." (Br. of Father at 16.) We disagree. While DCS certainly could have been more thorough, the record before us provides evidence that Father battered Mother, Father was incarcerated for various crimes during the proceedings, Father did not complete services, Father did not have stable housing or employment, and Children were doing well in their current placement. Additionally, the Family Case Managers and the Court Appointed Special Advocate testified that termination of Father's parental rights was in Children's best interests. Therefore, we conclude the evidence and findings were sufficient to support the trial court's conclusion that termination of Father's parental rights was in Children's best interests. *See In re A.D.W.*, 907 N.E.2d 533, 540 (Ind. Ct. App. 2008) (affirming termination of mother's parental rights because family case manager testified termination was in children's best interests and children were doing well in their placement).

# Conclusion

[24] DCS presented evidence to support Findings 7, 25, and 26. Finding 35 was surplusage and, thus, not a basis for reversal. Additionally, the findings supported the trial court's conclusions that the conditions under which Children were removed from Father's care would not be remedied and that termination was in Children's best interests. Accordingly, we affirm.

[25] Affirmed.

Najam, J., and Bailey, J., concur.